JUDGE ENGELMAYER

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Stokely Flemmings

**20 CV 00175**

Write the full name of each plaintiff.

_____CV_____
(Include case number if one has been assigned)

-against-

American International Group. Inc.

Ted Burowiec

Robert Balareni

Write the full name of each defendant. The names listed above must be identical to those contained in Section I.

Do you want a jury trial?
☒ Yes   ☐ No

# EMPLOYMENT DISCRIMINATION COMPLAINT

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

Rev. 3/24/17

## I.   PARTIES

### A. Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

| Stokely | S | Flemmimgs |
|---|---|---|
| First Name | Middle Initial | Last Name |

| 32 Searing Ave. | | |
|---|---|---|
| Street Address | | |
| East Newark | New Jersey | 07029 |
| County, City | State | Zip Code |
| 929.429-9530 | Stokely.flemmings@yahoo.com | |
| Telephone Number | Email Address (if available) | |

### B. Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. (Proper defendants under employment discrimination statutes are usually employers, labor organizations, or employment agencies.) Attach additional pages if needed.

Defendant 1:  American International Group, Inc.
Name
175 Water St.
Address where defendant may be served

| New York | New York | 10038 |
|---|---|---|
| County, City | State | Zip Code |

Defendant 2:  Ted Burowiec
Name
175 Water St
Address where defendant may be served

| New York | New York | 10038 |
|---|---|---|
| County, City | State | Zip Code |

Defendant 3:

| | |
|---|---|
| Robert Balareni | |
| Name | |
| 175 Water St | |
| Address where defendant may be served | |

| New York | NY | 10038 |
|---|---|---|
| County, City | State | Zip Code |

## II. PLACE OF EMPLOYMENT

The address at which I was employed or sought employment by the defendant(s) is:

American International Group, Inc.
Name

175 Water St.
Address

| New York | New York | 10038 |
|---|---|---|
| County, City | State | Zip Code |

## III. CAUSE OF ACTION

### A. Federal Claims

This employment discrimination lawsuit is brought under (check only the options below that apply in your case):

- ☒ **Title VII of the Civil Rights Act of 1964**, 42 U.S.C. §§ 2000e to 2000e-17, for employment discrimination on the basis of race, color, religion, sex, or national origin

    The defendant discriminated against me because of my (check only those that apply and explain):

    - ☒ race: Black/African American
    - ☒ color: Black
    - ☐ religion:
    - ☐ sex:
    - ☒ national origin: Jamaican/Caribbean

☒ **42 U.S.C. § 1981**, for intentional employment discrimination on the basis of race

My race is: **Black/African American**

☐ **Age Discrimination in Employment Act of 1967**, 29 U.S.C. §§ 621 to 634, for employment discrimination on the basis of age (40 or older)

I was born in the year: **1979**

☒ **Rehabilitation Act of 1973**, 29 U.S.C. §§ 701 to 796, for employment discrimination on the basis of a disability by an employer that constitutes a program or activity receiving federal financial assistance

My disability or perceived disability is: **Anxiety and Depression**

☒ **Americans with Disabilities Act of 1990**, 42 U.S.C. §§ 12101 to 12213, for employment discrimination on the basis of a disability

My disability or perceived disability is: **Anxiety and Depression**

☒ **Family and Medical Leave Act of 1993**, 29 U.S.C. §§ 2601 to 2654, for employment discrimination on the basis of leave for qualified medical or family reasons

B. **Other Claims**

In addition to my federal claims listed above, I assert claims under:

☒ **New York State Human Rights Law**, N.Y. Exec. Law §§ 290 to 297, for employment discrimination on the basis of age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status

☒ **New York City Human Rights Law**, N.Y. City Admin. Code §§ 8-101 to 131, for employment discrimination on the basis of actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation, alienage, citizenship status

☐ Other (may include other relevant federal, state, city, or county law):

## IV. STATEMENT OF CLAIM

### A. Adverse Employment Action

The defendant or defendants in this case took the following adverse employment actions against me (check only those that apply):

- ☐ did not hire me
- ☒ terminated my employment
- ☒ did not promote me
- ☒ did not accommodate my disability
- ☒ provided me with terms and conditions of employment different from those of similar employees
- ☒ retaliated against me
- ☒ harassed me or created a hostile work environment
- ☐ other (specify): _____

### B. Facts

State here the facts that support your claim. Attach additional pages if needed. You should explain what actions defendants took (or failed to take) *because of* your protected characteristic, such as your race, disability, age, or religion. Include times and locations, if possible. State whether defendants are continuing to commit these acts against you.

Plaintiff was employed by Defendant in September 2004 as a mail room clerk and was terminated on December 20, 2018 as a claim analyst 3. Defendant discriminated against Plaintiff based on his race/creed and disability. Defendant also failed to promote and retaliated against Plaintiff for complaining about harassment and bullying by managers, fai to provide Plaintiff a reasonable accommodation and failed to allow Plaintiff to rehabilitate from perceived disability. Plaintiff files this complaint under Title VII of the Civil Rights 'Act 1964. (See facts attached)

As additional support for your claim, you may attach any charge of discrimination that you filed with the U.S. Equal Employment Opportunity Commission, the New York State Division of Human Rights, the New York City Commission on Human Rights, or any other government agency.

## V. ADMINISTRATIVE PROCEDURES

For most claims under the federal employment discrimination statutes, before filing a lawsuit, you must first file a charge with the U.S. Equal Employment Opportunity Commission (EEOC) and receive a Notice of Right to Sue.

Did you file a charge of discrimination against the defendant(s) with the EEOC or any other government agency?

    ☒ Yes (Please attach a copy of the charge to this complaint.)

        When did you file your charge?  **On or after January 16, 2019**

    ☐ No

Have you received a Notice of Right to Sue from the EEOC?

    ☒ Yes (Please attach a copy of the Notice of Right to Sue.)

        What is the date on the Notice?  **October 4, 2019**

        When did you receive the Notice?  **October 14, 2019**

    ☐ No

## VI. RELIEF

The relief I want the court to order is (check only those that apply):

    ☐ direct the defendant to hire me

    ☐ direct the defendant to re-employ me

    ☐ direct the defendant to promote me

    ☐ direct the defendant to reasonably accommodate my religion

    ☐ direct the defendant to reasonably accommodate my disability

    ☒ direct the defendant to (specify) (if you believe you are entitled to money damages, explain that here)

Plaintiff has suffered and continues to suffer emotional distress and mental anguish Plaintiff has lost wages and continues to loose wages as a result of his experience a AIoG. Plaintiff has medical bills as a result of the foregoing and seek compensatory damages, back pay / front pay and punitive damages.

## VII.  PLAINTIFF'S CERTIFICATION

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| December 30, 2019 | | | *[signature]* |
|---|---|---|---|
| Dated | | | Plaintiff's Signature |
| Stokely | | S | Flemmings |
| First Name | | Middle Initial | Last Name |
| 32 Searing ave | | | |
| Street Address | | | |
| East Newartk | | New Jersey | 07029 |
| County, City | | State | Zip Code |
| 929.429-9530 | | Stokely.flemmings@yahoo.com | |
| Telephone Number | | Email Address (if available) | |

I have read the attached Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☒ Yes    ☐ No

    If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.

Plaintiff was employed by Defendant in September 2004 as a mail room clerk and was terminated on December 20, 2018 as a claim analyst 3. Defendant discriminated against Plaintiff based on race/creed and disability. Defendant also retaliated against Plaintiff and created a hostile work environment as a result of Plaintiff complaining about harassment and bullying by managers, failed to provide Plaintiff a reasonable accommodation due to perceived disability and failed to allow Plaintiff to rehabilitate.

In 2011 Plaintiff was first targeted and intimidated by manager Brian Conlin who interfered or attempted to interfere with Plaintiff's performance appraisal evaluation by inappropriately emailing Plaintiff to ask "how did you get into the Department". Brian was at the round table with Plaintiff's direct manager discussing performance appraisals and grades for all employees. Plaintiff printed out and showed the email to his direct manager when he returned from the round table. Plaintiff's manager reported the matter and Brian was admonished by head of the Department, Ted Burowiec. However, no further action was taken and Ted didn't see it fit to report Brian's highly inappropriate behavior to human resources. What Brian did was an affront to the performance appraisal process.

A bit over three years later, in or around May 2014 Brian was appointed Plaintiff's direct manager and Brian immediately assigned a disproportionate number of claims to Plaintiff in comparison to other employees in the group, 114 in a single day, and gave Plaintiff a grade 3 on his performance appraisal. Brian didn't discuss said performance appraisal with Plaintiff as in accordance with the procedures of the performance appraisal process. Plaintiff found out via an email prompt to check a website where he discovered the grade. That was the only performance appraisal Plaintiff had where the manager didn't have a face to face discussion with Plaintiff. The appraisal and grade were arbitrary since no opportunity was given to question the basis for the appraisal. Plaintiff was furious and complained to Ted about the averse performance appraisal since Plaintiff received a 1 atleast 2 years in a row and could not fathom the justification for the averse performance rating. Ted claimed the rating was due to Plaintiff being promoted the prior year; however, upon information and belief, other analysts in Brian's group who were also promoted received grade 1 on their performance appraisals. Plaintiff also pointed out that the volume of claims assigned could not be efficiently managed and indicated that it will be difficult for Plaintiff to overcome the averse performance rating given the high number of claims Plaintiff was handling. Ted said the workload would be alleviated once vacancies were filled. Ted did not report Brian's actions any further.

Brian was Plaintiff's direct manager for about 2 months, and in July 2014 Robert Balareni became Plaintiff's direct manager. Although Ted said new employees would help to reduce the workload, Plaintiff's workload was never reduced after additional employees were hired, and as a result Plaintiff never received another favorable performance rating. Employees in Brian's group also got promoted at an unusually fast rate.

None of the employees in Brian's group worked from home, even when they qualified to work from home. Plaintiff was coerced to work from home when the work from home program was initiated in 2013. Plaintiff was advised that person's working from home would likely not receive favorable performance ratings from managers. Therefore, when

Plaintiff, and other employees, were initially offered the cutting edge ability to work from home, Plaintiff, and other employees, declined to work from home. A few weeks later Defendant insisted and Plaintiff accepted. Primarily minorities were initially offered the opportunity to work from home. During that period, the company was attempting to reduce its office space in order to save money; however, upon information and belief, managers did not like the idea of employees not being in the physical office. Managers had to go to the office every day.

In September 2016 Plaintiff applied for analyst 4 positions that became available and Ted and Rob became annoyed. Nevertheless, Plaintiff applied for every analyst 4 position that became available within the group from 2016 up until termination in December 2018. In September or October 2016 after Plaintiff applied and was interviewed for an analyst 4 position that became available. Another analyst 4 position became available within the group in about two weeks. Upon information and belief, Plaintiff applied for the second position. It was reasonably expected that Plaintiff would apply for the position. Prior to Human Resources formally notifying Plaintiff that another candidate was selected for the position, Ted told his secretary, who sits across from Plaintiff, that they selected a candidate for the position. Plaintiff believes Ted's actions was deliberately done to slight Plaintiff and to intimidate Plaintiff to not apply for positions within the group. What Ted did was so blatant that another employee who sat in very close proximity to Ted's secretary, who also reasonably expected that Plaintiff would apply for said analyst 4 position, immediately went over to Plaintiff and said "are you freaking kidding me". Said analyst found Ted's actions to be inappropriate and spiteful. A few weeks later Plaintiff was notified that said analyst 4 position was awarded to another candidate.

On or about August 18, 2017, leading up to the 2017 performance appraisal (September deadline) Defendant Robert Balareni emailed Plaintiff and took a condescending tone with regard to Plaintiff's work product as it related to the handing of a claim. It turned out that Rob's analysis was wrong. Rob had been Plaintiff's direct manager for a bit over three years and had never taken a condescending tone with Plaintiff before. This was also a point in time when the company shut down a similar claim handling group in Kansas and some of the claims that were handled there were transferred to our group for handling. A number of these claims were problematic, including the one Rob was condescending about. These claims demanded immediate attention since they were active claims that hadn't been attended to for months. This was very similar to what happened when Brian transferred 114 claims to Plaintiff in 2014, the company had closed its Berkley Heights, NJ office. Given the history of Plaintiff complaining to Defendant managers in the past about the workload being unsustainable and the impact it had on performance, Plaintiff began to realize that complaining to said managers would not be productive. Another analyst 4 left the group around this time (September or October 2017) and Plaintiff applied for that position. Since Rob had never before taken a condescending tone with Plaintiff, Plaintiff believes his actions were in an attempt to discourage Plaintiff from applying for the vacant position. Another analyst 4 position within the group became available in April 2018 and Plaintiff applied. Defendants argument for not promoting Plaintiff was due to Plaintiff's low performance rating. This argument was also used to justify paying plaintiff less and less money each year.

Over this period, from August 2017 through to Plaintiff's termination, Defendants harassed and bullied Plaintiff at a more intensely, including engaging persons within and outside the company to convince Plaintiff to quit. Upon information and belief, Plaintiff developed anxiety during this period. In May 2018 Plaintiff had a conversation with a former analyst of the group who advised about receiving a disproportionate number of claims, compared to other similar ranking analysts in their group, and confronted the manager about it. That employee did not report the matter any further and seemed to regret not doing so because the analyst still felt like a target at the time we had the conversation. Plaintiff filed a complaint with corporate human resources in late May or early June 2018.

Plaintiff complained to corporate human resources / employee relations about his experience expressed herein.  Plaintiff also complained that he was told that "these guys are going to f***(expletive) you". Corporate human resources advised Plaintiff at the initial stages of filing his complaint that the conversations were recorded. However, once Plaintiff complained about the above referenced expletive comment, the representative said "who talks like that", asked Plaintiff to call her directly going forward, as opposed to calling the recorded line toll free number, and abruptly ended the conversation.

As the complaint process progressed, Plaintiff's anxiety and depression got extreme. Plaintiff eventually went on Family Medical Leave (FMLA) and Short Term Disability after Rob suggested that Plaintiff do so. Plaintiff followed suit and stated that he was being bullied and harassed by his managers. When Plaintiff returned from leave of absence in August 2018, corporate human resources had completed their interview with Rob and Plaintiff was told to work with Rob to rehabilitate Plaintiff's performance. Plaintiff objected since it felt impractical that the individuals who had purposefully sabotaged Plaintiff's progress over the years were to be the ones to help Plaintiff improve.  Plaintiff believes Defendants used their arbitrary and fraudulent performance appraisal process to limit Plaintiff's ability to progress and to not promote Plaintiff, in order to promote their favored non-minority employees. Despite complaints against Ted, human resources never gave any feedback regarding same.

Either the same day or the day after Plaintiff spoke with human resources, Rob called Plaintiff and was condescending, intimidating and threatening in the conversation. Plaintiff immediately called human resources and reported the details of the call. Plaintiff took Rob's actions to be in direct retaliation for filing said complaint with human resources.  The days following the call with Rob, which was the first conversation since Rob was interviewed by the investigator, were extremely stressful for Plaintiff. Consequently, Plaintiff went back out on medical leave based on his psychologist's instructions on or about September 9, 2018. On or about September 18, 2018, Plaintiff returned a call from Rick Joyers at AIG who advised Plaintiff that AIG was going to terminate Plaintiff's employment once Plaintiff returned from medical leave. Rick Joers made a note of what items at Plaintiff's desk the company should mail to Plaintiff's home, since the company didn't want Plaintiff to return to its premises.  Plaintiff's leave was scheduled to end in November 2018. Defendants refused to advise Plaintiff of their reason for terminating Plaintiff in writing.